980 F.2d 399
 24 Fed.R.Serv.3d 220
 Dominick GUARINO and Jacquelyn Brown-Guarino, Plaintiffs-Appellants,
v.
BROOKFIELD TOWNSHIP TRUSTEES, individually and in their
official capacities; Tom Jones and Kenneth R.
Hudak, individually and in their
official capacities,
Defendants-Appellees.
 No. 91-3961.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 16, 1992.
Decided Nov. 25, 1992.
 
 1
 E. Winther McCroom (argued), Breckenridge & McCroom, Youngstown, Ohio, for plaintiff-appellant.
 
 
 2
 George A. Chuparkoff, Stephen J. Chuparkoff (argued and briefed), Youngstown, Ohio, James J. Misocky, Office of the Pros. Atty., Warren, Ohio, for defendant-appellee.
 
 
 3
 Before: MARTIN and SILER, Circuit Judges; and CLELAND, District Judge.*
 
 
 4
 CLELAND, District Judge.
 
 
 5
 Plaintiffs appeal the district court's grant of summary judgment to defendants in this civil rights action which challenged plaintiffs' discharge from employment in the Police Department of Brookfield Township, Ohio. When plaintiffs did not respond to the motion, the district court based its review of the facts upon the materials presented and highlighted by the moving party, and concluded that no genuine issues of material fact existed for trial. Defendants thereupon were determined to be entitled to judgment as a matter of law. This Court agrees, finding firstly that the trial court correctly limited its review to the facts designated by the moving party, and secondly that it did not err in granting defendants' motion for summary judgment.
 
 FACTUAL BACKGROUND
 
 6
 In its Memorandum Opinion and Order, the District Court relied upon the factual record presented by the defendants, and concluded that, since plaintiffs did not respond with a different version, the designated facts were uncontroverted. For reasons explained at Discussion, Section I, infra, the same facts are accepted and examined in this Opinion.
 
 
 7
 Appellants Dominick Guarino and Jacquelyn Brown-Guarino were formerly employed with the Brookfield Township Police Department. Dominick was originally hired as a part-time officer and Jacquelyn, at the time known as Jacquelyn Brown, was employed as a police radio dispatcher. She was married to William Brown, another part-time police officer with the Township. Several events in early 1986 led to Dominick's and Jacquelyn's discharge from employment.
 
 
 8
 During a time in which the Browns were experiencing marital problems, Jacquelyn and Dominick began an intimate relationship. They each sued for divorce--Jacquelyn filing in February 1986--and they have subsequently married.
 
 
 9
 On February 18, 1986, Jacquelyn wrote a letter to then-interim Chief of Police, Kenneth Hudak, expressing concern about her employment. She acknowledged that rumors and gossip of her domestic problems and of her relationship with Dominick Guarino were spreading throughout the Department.
 
 
 10
 On March 4, 1986, William Brown wrote a letter to Chief Hudak and the Brookfield Township trustees. In the letter he complained that Dominick would visit Jacquelyn at the Brown's home while he was away at work, many of these times while Dominick was on duty with the Department. On one occasion, William said, he found Dominick and his wife sitting side by side on a love seat. He confronted them and struck Dominick, but Brown's brother-in-law broke up the ensuing fight. Attached to this letter were two handwritten statements by the Browns' young sons to the effect that Dominick commonly appeared at their home every Wednesday and Thursday after their father had left.
 
 
 11
 Throughout this time period, the department and the Trustees received numerous other complaints about Dominick meeting Jacquelyn at her house while he was on duty, leaving a marked patrol cruiser parked in the drive. The Trustees and Chief Hudak informed Dominick and Jacquelyn of the complaints against them. William Brown's letter was shown to them and they were asked to respond. On March 8, 1992, Jacquelyn replied in writing to the letter and informed the Chief and the Trustees that she was having domestic problems with her husband and that she had established a personal relationship with Dominick Guarino. She acknowledged that Dominick would meet her at her home while he was on duty. She also described a fight she had with her husband at the police station while she was on duty, and recounted that she had became so upset from the fight that she left duty early and went with Dominick, never to return to her husband. Dominick also responded to the complaints in writing, similarly acknowledging that he went to Jacquelyn's house while he was on duty. He offered in addition an assortment of explanations, which included his need to deliver to Jacquelyn a copy of rules and regulations for a local cemetery.
 
 
 12
 Thereafter, the Trustees continued to receive complaints about Dominick and Jacquelyn. On several occasions, the Trustees and Chief Hudak informed Dominick and Jacquelyn of the complaints against them and asked them to keep their "personal matters" away from the department. The Chief eventually recommended to the Trustees that Dominick and Jacquelyn be discharged.
 
 
 13
 Before the Trustees took any action on this recommendation[1], the Department received a telephone call that Jacquelyn had taken her two sons from William Brown's house. By this time, Jacquelyn and William had separated with William having physical custody of the boys. According to the radio log sheets, Jacquelyn picked up her sons to take them to a Dairy Queen. The boys, however, thought that their mother was kidnapping them, and became hysterical. They ran out of her car to the home of a neighbor who telephoned the police. On that same night, William drove to the Brookfield Police Station, complained that Jacquelyn had assaulted him and filed a formal criminal complaint against her.
 
 
 14
 Dominick and Jacquelyn were suspended until the next Trustee's meeting which was scheduled for May 15, 1986. The Chief notified them of the meeting and advised them to attend. At the May 15th meeting, the Trustees confronted Dominick and Jacquelyn with the complaints against them and accused them of the following improper conduct: 1) fighting while on duty; 2) Dominick visiting Jacquelyn's home while he was on duty; 3) allowing their personal domestic problems to interfere with their work; and 4) making unauthorized long distance phone calls from the police station. Dominick and Jacquelyn were allowed to respond, and did, denying the charges. After considering the matter, the Trustees removed the suspension and placed them on probationary status.
 
 
 15
 Shortly after this meeting, however, Chief Hudak discovered clear evidence confirming his original impression that Dominick and Jacquelyn had violated department rules by making numerous personal long distance telephone calls from the station without prior approval, and without recording many of the calls on the log sheet. He informed the Trustees of these findings, and they finally discharged Dominick and Jacquelyn at the next meeting on June 16, 1986.PROCEDURAL HISTORY
 
 
 16
 In June, 1987, plaintiffs filed this claim pursuant to 42 U.S.C. §§ 1983, 1986, 1987, and 1988 alleging that various of their constitutional rights had been violated in the discharge decision. Specifically, they alleged that defendants violated their right to privacy, their right to freely associate, their right to be protected from deprivation of property without due process of law, and their right to equal protection under the law. They cited the 1st, 5th, 9th and 14th Amendments to the Constitution. (JA--8, 11).
 
 
 17
 Ample time for discovery was allowed by the trial court, and trial had been scheduled to begin in the fall of 1991. On June 21, 1991, defendants moved for summary judgment. Plaintiffs did not respond to the motion. Subsequently, on September 10, 1991, the district court determined that various facts presented by defendants were "uncontroverted," and proceeded to examine those facts. In its Opinion, the court viewed the facts in the light most favorable to the non-moving party, but determined that the defendants had met their burden of demonstrating the absence of any genuine issue of material fact for trial on every one of the theories advanced by the plaintiffs in their pleadings. With that factual examination and those legal determinations, the court entered judgment for the defense, and this appeal followed.
 
 STANDARD OF REVIEW
 
 18
 The circuit court reviews a grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We use the same test as that used by the district court for determining whether summary judgment should be granted. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to preclude the granting of summary judgment, the non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir.1989). The non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor. Street, at 1476, 1477.
 
 DISCUSSION
 I.
 
 19
 In their brief, the appellants argue that "... the nonmoving party [ ] was under no obligation to present evidence showing the existence of ..." genuine issues of material fact because such issues could be found "inherent in the [ ] documents." (Appellant's brief, pages 5 and 7.) Appellants say the district court erred in limiting its analysis of the evidence to the areas highlighted by the moving party, and claim that it should have been "unquestionably evident" that genuine issues existed had the district judge only reviewed "the material [ ] before the court." (Appellant's brief, page 8)[2] Emphasizing his position during oral argument, counsel for appellants readily adopted a hypothesis offered in a question from the bench: had the moving party submitted to the judge only portions of depositions or exhibits instead of the complete versions, counsel agreed that plaintiffs would have been required to respond in kind, and the consequence of silence would more clearly have been defeat. But here, according to appellants' counsel, it was exactly because defendant gave the judge reams of material that it had submitted "too much to allow it to succeed." In support of his theory that justiciable facts exist, counsel now for the first time points to specific testimony and exhibits from within those reams in several areas[3].
 
 
 20
 Appellants' argument that the district court erred in not searching the record sua sponte is wholly without merit. The facts presented and designated by the moving party were the facts at hand to be dealt with by the trial court. Furthermore, their status as "the facts at hand" is maintained intact here on review. This Court will not entertain on appeal factual recitations not presented to the district court any more readily than it will tolerate attempts to enlarge the record itself.[4] "In reviewing summary judgment, we look at [the] record in the same fashion as the district court." Estate of Mills v. Trizec Properties, 965 F.2d 113, 115 (6th Cir.1992), citing Qualicare-Walsh, Inc. v. Ward, 947 F.2d 823, 825 (6th Cir.1991).
 
 
 21
 Several other panels of this Circuit have noted--sometimes merely in passing, but usually in motions graced with a response--that there is no duty imposed upon the trial court to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir.1989), citing Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C.Cir.1988). See also InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990) (district court not required to speculate on which portion of the record the non-moving party relies, nor is court obligated to "wade through" the record for specific facts). Dozens of other panels, many speaking in unpublished prisoner appeals, have dealt with the circumstance of a dispositive motion in want of a response and have consistently assumed without specific comment that a court's reliance on the facts advanced by the movant is proper and sufficient.[5]
 
 
 22
 These observations and unspoken assumptions, which the Court here intends to consolidate and anchor, are readily supported by the terms of Rule 56(e) itself. The non-moving party bears a burden once the movant has pointed to record evidence showing that there are no genuine issues of material fact: "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." (emphasis added). As the Supreme Court stated in Celotex, the non-moving party must "designate" such specific facts. Id., 477 U.S. at 324, 106 S.Ct. at 2553. This burden might "not require the nonmoving party to 'designate' facts by citing specific page numbers," ... [but] "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies." InterRoyal, supra at 111. This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden--for example, by remaining silent--its opportunity is waived and its case wagered.
 
 
 23
 Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record. Beyond that, to adopt appellants' argument would require us to carry out on appeal a first review of what amounts to an expanded record and would result in a substantial and needless expenditure of judicial resources in this and countless other cases. This would defeat a central purpose of a Rule "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Proc. 1." Celotex, id., 477 U.S. at 327, 106 S.Ct. at 2555.
 
 
 24
 If accepted and enforced, appellants' argument would leave nothing to discourage the non-moving party, especially one with a reasonably arguable case, from declining (or "forgetting" or being "too busy") to respond to a motion for summary judgment, secure in the knowledge that the district court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact. Even if the trial court were to grant the motion, this passive party could still relax, assured that he could timely file an appeal, flyspeck the factual record and the district court's opinion, and only then, on de novo review, identify for the court of appeals the answers, the exhibits and the other facts he wishes to assert as supporting specific issues. Indeed, precisely because the review is de novo, with the appellate court standing in the same position as did the trial court, Estate of Mills, supra, 965 F.2d at 115, no principle exists under appellants' argument that could legitimately deflect a nonmoving party's insistence that the appellate panel itself assume the duty to search for genuine issues. What concept of judicial economy is served when judges (at least one, perhaps as many as four) are required to do the work of a party's attorney? In many cases, such as this one, the materials presented by the moving party may be extensive. Here, the several volumes submitted with the motion included complete deposition transcripts with exhibits. From within this material, however, support for the moving party's argument was provided by designating evidence: referring the court to specific portions of the testimony and to certain exhibits. Now, after remaining mute at the trial court level, appellants' argument invites us to mandate the trial judge's active assistance in opposing the motion.
 
 
 25
 Effectively searching the record for "genuine issues" requires time, of course, but it also requires an adroit knowledge of the core issues of proof in the case along with an ability to recognize how various threads of testimony, woven together, could possibly defeat a dispositive motion. It is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome. Thus, the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not. And then, as to the element of time--if our trial courts could conjure up things for themselves, we believe that "more time" would be high on most lists. Conjuring, though, still lies beyond grasp. To try to review the complete collection of exhibits, or to read each line of every page of all submitted depositions--much of which may not even be relevant to the real issues at hand--this represents to courts at both the trial and appellate levels an unrealistic ideal, an unaffordable luxury.[6]
 
 
 26
 Additionally, it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion. Such a role would carry the court far beyond simply reviewing evidence in "the light most favorable to the non-moving party," or giving effect to inferences reasonably arising from the designated evidence[7]. For these and other entirely sound reasons, the Rule requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues.
 
 
 27
 While rejecting appellants' invitation, this court does not mean to imply that a trial court, as it reviews the evidence which is presented in circumstances such as these, may blithely accept the conclusions argued in the motion. The trial court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party. The court, for example, must not overlook the possibility of evidentiary misstatements presented by the moving party, and cannot ignore the context within which evidence such as a deposition answer was given. Of course, outright misstatements are not to be tolerated. And, though evidence may be accurately quoted, context may challenge or defeat the assertion advanced by the movant, and reasonable inferences must be considered if apparent from the designated evidence and favorable to the non-moving party. We are confident that the trial courts will be alert to these and other issues as such motions are reviewed.
 
 
 28
 This Court concludes that the district judge was correct in relying on the evidence designated by defendants in their motion and was justified in concluding that the facts he relied upon were uncontroverted. We must now simply determine de novo whether defendants met their initial Rule 56 burden; i.e., whether the facts, as presented by defendants, required a determination that they were entitled to judgment as a matter of law.
 
 II.
 A. PLAINTIFFS' RIGHT TO PRIVACY CLAIM
 
 29
 In their motion for summary judgment, defendants pointed to an absence of evidence in the record to support plaintiffs' claims that a constitutional right to privacy had been violated. Because it was virtually impossible to determine from the pleadings how any privacy rights had been violated, and because of the logical difficulties in "proving a negative" (the absence of a genuine issue in this regard), defendants presented instead countervailing evidence from the record that affirmatively showed the discharges to have been justified. Specifically, defendants presented evidence that plaintiffs violated departmental regulations prohibiting officers and employees from using their designated on-duty time for personal business and from engaging in conduct which would "bring embarrassment and disrespect" to the Department. Additionally, evidence was presented that plaintiffs had violated departmental regulations by making numerous personal long distance phone calls without prior approval.
 
 
 30
 In their appellate brief, Jacquelyn and Dominick cite Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), for the proposition that they had a constitutionally-protected privacy interest in avoiding the compelled disclosure of "personal matters." However, no affirmative evidence was identified in the review of the record below that would support a claim that either was forced to disclose personal matters. Such evidence as was available to the district court showed that when the Trustees received the complaints, they asked Jacquelyn and Dominick simply to respond to the charges, and to do so in writing.[8] Their responses could have taken any of a limitless variety of forms, many of which (such as, if true, simple denial) would have no effect, even tangentially, upon privacy interests. Dominick, in his letter response to the Trustees, denied the allegations of improper conduct made by William Brown and others. Jacquelyn, however, chose to publish the fact that she was experiencing marital difficulties and that she had formed a personal relationship with Dominick. No evidence here suggests that either was forced to disclose personal and intimate details nor that either was discharged because such details became known to the Trustees.
 
 
 31
 Defendants properly met their burden as the moving party by suggesting and proving an absence of evidence in the record to support the plaintiff's case. Plaintiffs could have presented affirmative evidence to attempt to demonstrate that a genuine issue of material fact existed on this claim, but chose not to. Upon de novo review, the Court concludes that the district court's judgment, founded in the defendants' factual recitations, must be AFFIRMED.
 
 
 32
 B. PLAINTIFFS' RIGHT TO FREELY ASSOCIATE CLAIM
 
 
 33
 As with the "privacy" claim, defendants, in their motion for summary judgment, asserted an absence of evidence to support plaintiffs' claim that their "right to freely associate" had been violated by discharge from employment, and demonstrated conversely that the decisions to discharge were based on factors other than the intimate relationship Dominick and Jacquelyn had developed.
 
 
 34
 Defendants presented extensive evidence to show that the decisions to discharge were for clear violations of departmental regulations. Appellants now dispute the concept that departmental regulations were violated, and point to several facts that might call into question defendants' stated reasons for discharge. As noted above, this Court will not brook an expansion here of the record presented to the trial court. Within the facts designated to the district court, there was no evidence sufficient for a jury to return a verdict in plaintiffs' favor; i.e., no evidence was at hand which would have established even a prima facie case shifting the burden to defendants to demonstrate legitimate reasons for discharge. Jacquelyn and Dominick, in answering, could have presented affirmative evidence in an attempt to demonstrate, for example, that they were compelled to disclose facts about their personal lives, or that they were discharged because of their intimate relationship. They chose not to, and because defendants clearly showed an absence of material facts that could support plaintiffs' claim, the district court's decision must be AFFIRMED.
 
 C. PLAINTIFFS' DUE PROCESS CLAIM
 
 35
 In the motion for summary judgment, defendants presented evidence that plaintiffs were informed of the charges against them and that they were given an opportunity to respond before they were discharged. The burden then shifted to plaintiffs to present specific facts to deny, or at least to call into question, whether there was any predeprivation notice with an opportunity to respond. Because the facts as presented by the defendants supported their proposition, the district court properly entered summary judgment on the claim.
 
 
 36
 Although appellants now point to certain portions of their deposition testimony to suggest that they were not given notice and an opportunity to respond, we say here once again that we will not widen our view of the facts on appeal beyond the record presented to the trial court. The due process claims fail for these reasons:
 
 
 37
 A 14th Amendment due process claim arising out of discharge from employment will properly lie only if the employee has a constitutionally recognized property interest in his continued employment. See, Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Once such a property interest is established, due process then requires that any deprivation of it must be preceded by notice and an opportunity to respond. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493. Ohio state law is determinative on the issue of whether plaintiffs in this case had a constitutionally protected property interest in their employment.
 
 The Ohio Revised Code provides that
 
 38
 A patrolman, other police district employee, or police constable, who has been awarded a certificate attesting to satisfactory completion of an approved state, county, or municipal police basic training program, as required by section 109.77 of the Revised Code, may be removed or suspended only under the conditions and by the procedures in section 505.491 to 505.495 of the Revised Code. Any other patrolman, police district employee, or police constable shall serve at the pleasure of the township trustees. In case of removal or suspension of any appointee, an appeal may be had from the decision of the board to the court of common pleas of the county in which the district is situated, to determine the sufficiency of the cause of removal or suspension. Such appeal shall be taken within ten days of written notice to the appointee of the decision of the board.
 
 
 39
 O.R.C. § 505.49(A).
 
 
 40
 Based on this statute and the decision in Smith v. Fryfogle, 70 Ohio St.2d 58, 24 O.O.3d 114, 434 N.E.2d 1346 (1982), the district court determined that Jacquelyn "served at the pleasure of the township trustees" and that, therefore, she had no constitutionally protected property interest in continued employment. No more process was due than the process she herself has alleged to have occurred, and she has therefore failed to state a claim, in this regard, upon which relief could be granted.
 
 
 41
 Dominick, on the other hand, had been awarded a certificate of completion of police basic training and was therefore not subject to dismissal at will. The district court correctly held that he had a property right in continued employment and that some more extended process was due. The district court, however, reviewed defendants' motion for summary judgment and agreed with the point of view, supported by the cited documents, that Dominick had received adequate notice of the complaints against him and had an opportunity to respond to the charges at the May 15, 1986, Trustees' meeting.
 
 
 42
 To the extent that there may have been any degree of uncertainty in the district court's mind upon review of the designated facts, we believe the district court need not have hesitated too long on the issue. Even if Dominick had not been told in these circumstances exactly what the meeting was going to be about, or had not been given a detailed opportunity to respond to the charges presented against him, that state of affairs would be insufficient to justify denial of summary judgment. In Loudermill, the Supreme Court explained that the pre-termination opportunity to respond is not required to be an elaborate evidentiary hearing. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493. Rather, it should be "an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and supported by [sic] the proposed action." Id. at 545-6, 105 S.Ct. at 1495. Additionally, the fact that post-deprivation remedies are available allows for an even less formal pre-termination hearing. Id. at 546-7, 105 S.Ct. at 1495-96. Thus, the Trustees were not constitutionally required to inform plaintiff of the precise nature of the May 15, 1986, meeting. Nonetheless, that plaintiff had in fact been confronted with the letters and complaints written by William Brown and others evidences notice to him of at least the sense of the charges against him. Additionally, plaintiff availed himself of the opportunity to respond in writing to the allegations, and seized the opportunity to respond verbally at the May 15th meeting.
 
 
 43
 The trial court properly concluded that each plaintiff was afforded a form of process that was due under the circumstances, finding that each was adequately apprised of the nature of the charges and allowed an opportunity to respond. Punctuating this conclusion as to Dominick was the statutory post-deprivation appeals process he did not use. Our de novo review persuades us that summary judgment was properly granted, and that the district court's ruling must be AFFIRMED.
 
 D. PLAINTIFFS' EQUAL PROTECTION CLAIM
 
 44
 Defendants, in the motion for summary judgment, pointed to an absence in the record to provide a basis for a 14th Amendment equal protection claim. The Equal Protection clause requires that a state and its subdivisions apply its legislation and actions evenhandedly to all persons similarly situated in a designated class. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). However, the fact that individuals within one class are treated differently from those outside that class does not always constitute a violation of equal protection principles. Rather, the differing treatment of individuals is valid if it is rationally related to the achievement of a legitimate state interest, unless such differing treatment interferes with the exercise of a fundamental constitutional right or operates to the peculiar disadvantage of a "suspect" class such as a minority race. Id.
 
 
 45
 In this case, appellants have not suggested that they are members of a suspect class, and they have not claimed that their discharges affected the exercise of any fundamental rights. To support this count, Jacquelyn and Dominick would have to establish that the Trustees' decision was not rationally related to a legitimate state interest such as the orderly administration of the Department. Plaintiffs could have offered a response to the defendant's views, chose not to, and the district court correctly concluded that summary judgment should be granted on this claim. No designated evidence existed which either would prove an equal protection violation, or would call into question the defendant's analysis[9]. The district court's ruling granting summary judgment on this final theory was correct, and is AFFIRMED.
 
 CONCLUSION
 
 46
 A trial court, in reviewing a motion for summary judgment, holds the moving party to the burden established by the plain language of Rule 56: to show "that there is no genuine issue as to material fact, and that the moving party is entitled to a judgment as a matter of law." The fact that the non-moving party does not respond, or that the motion may otherwise seem to be unopposed, does not change this requirement or lessen the burden on the moving party or the court. See Carver v. Bunch, 946 F.2d 451 (6th Cir.1991).
 
 
 47
 In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will sua sponte comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."
 
 
 48
 If such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and "judgment [ ] shall be rendered forthwith...." Fed.R.Civ.P. 56(c).
 
 
 49
 The trial court here held the moving party to exactly this test, examined the designated evidence, analyzed the law governing the issues in the case and determined that the movant's burden had been met. Summary judgment was properly entered forthwith, and the judgment of the district court in each respect is accordingly AFFIRMED.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It is acknowledged by the parties that is was the Trustees, not the Chief, who were the decision-makers with regard to possible discharge from employment
 
 
 [2]
 It seemed implicit from their appellate brief that appellants intended to convey a view that the trial judge should have been expected to read all of the material submitted by defendant (some 660 pages; see footnote 6, below). Any possible doubt on this point was resolved by appellants' counsel at oral argument. He indeed meant all
 
 
 [3]
 E.g., testimony which might have been relevant to an analysis of their Due Process claim in which plaintiffs deny (or say they "don't remember") being informed of the charges against them
 
 
 [4]
 Indeed, the Court notes its order dated April 7th, 1992, granting a motion to remove two newspaper articles, not part of the original record, inserted in the Joint appendix by Appellants
 
 
 [5]
 Jude v. Inez Deposit Bank, 968 F.2d 1215 (Table, Text in WESTLAW), Unpublished Disposition, 1992 WL 158877 (6th Cir. (Ky.), Jul 07, 1992) (NO. 91-6167) ("review of the materials presented to the trial court affirms that court's conclusion that no genuine issues of material fact existed"); Sharp v. U.S. Dept. of HHS, 961 F.2d 1578 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1992) (district court properly granted summary judgment when plaintiff failed to respond with controverting affidavits); Sammons v. Read, 959 F.2d 236 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1992) (plaintiff failed to provide any evidence to refute defendant's affidavit and therefore, no genuine issue of material fact existed); Colley v. Brown, 949 F.2d 397 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (summary judgment properly granted by district court in light of plaintiff's failure to respond to motion for summary judgment); Holloway v. Mason, 948 F.2d 1289 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (although cross motions for summary judgment were filed, plaintiff failed to present affirmative evidence regarding critical issues--the record as presented supports the district court's decision); Berry v. Harken, 945 F.2d 404 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (plaintiff failed to submit evidence in support of his claim; therefore, district court properly granted summary judgment for defendants because the record shows that no genuine issue of material fact exists and that defendants are entitled to judgment as a matter of law); Vaughn v. Baldwin, 940 F.2d 662 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (district court's decision denying summary judgment reversed because plaintiff offered nothing to contradict defendant's supporting affidavit and therefore no genuine issue of material fact existed); Chrysler Motors Corp. v. Western Motor Parts, Inc., 935 F.2d 269 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (although defendant responded to motion for summary judgment, he did not raise an issue of fact regarding his individual liability and summary judgment was therefore properly granted); Goins v. Clorox Co., 926 F.2d 559 (6th Cir.1991) (with nothing offered in the record to rebut the evidence offered by defendants, no issue of contested fact exists); Hubbert v. Elkins, 925 F.2d 1463 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1991) (appellate court considered evidence before the district court and affirmed summary judgment in the absence of a response to the motion for summary judgment); Shy v. Bhatt, 909 F.2d 1484 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1990) (district court's granting of summary judgment was proper because plaintiff failed to respond and the record shows no genuine issue of material fact); Shumaker v. Veterans Admin., 902 F.2d 1569 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1990) ("due to his failure to respond to the motion for summary judgment, plaintiff cannot challenge defendant's factual assertions as supported by affidavits"); Brown v. Sherman, 898 F.2d 153 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1990) (district court's grant of summary judgment was proper because plaintiff did not respond to the motion and therefore did not present affirmative evidence that due process requirements were not met); Brown v. Toombs, 898 F.2d 153 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1990) (plaintiff did not respond to defendant's motion with affidavits establishing a genuine issue of material fact and therefore summary judgment was properly granted); Bout v. Brown, 895 F.2d 1412 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1990) (no genuine issue of material fact existed before the trial court and therefore summary judgment was proper); Littlejohn v. Larson, 891 F.2d 291 (Table, Text in WESTLAW), Unpublished Disposition (6th Cir.1989) (summary judgment was proper where plaintiff failed to respond to defendant's motion for summary judgment and therefore no genuine issue of material fact existed)
 
 
 [6]
 Consider, for example, the resources that appellants would have the courts expend in this motion alone, exploring and unearthing particular facts from among 459 pages of deposition transcripts and over 50 pages of memos, letters, and other documents. The Joint Appendix comprises three volumes containing over 660 pages of material. Assuming that two pages of average material can be carefully read in a minute, there are five and a half hours' worth of pure factual inquiry here for a judge. Beyond that, the items appended as exhibits included photocopies of notes written in a hand whose legibility is, at best, challenging, and copies of multipage letters which, although typewritten, are compacted to stupefying density with small font, single spacing and almost no margins. (To gain some appreciation of the effect, one need only imagine being required to carefully read all of Footnote 5, supra, and that it droned on for another six or seven pages.) The sands of time continue to run apace as the court endeavors to study and understand these profusely fact-laden volumes. Of course, any time that might be appropriate for a judge's legal analysis of the issues only compounds the problem
 
 
 [7]
 If such "advocacy for the silent" were accepted as the trial court's proper role henceforth, appellants' argument provides no guidance in determining how aggressive we should require trial judges to be in conducting that effort. Would there be future appeals by nonmoving parties claiming that the trial court, as it searched the record in the place of their non-responding attorneys, failed to be sufficiently inventive in its legal analysis of the facts? Or that the court failed to meet some kind of minimal standard of competent advocacy? And would a trial court's lack of tenacity in searching for missing facts thereby deprive the litigant of some form of "effective assistance of the court"? The answer must be "no," since down this path of illogic lies the absurd conclusion that it violates due process for the court to require the attorney to argue the case
 
 
 [8]
 The Court notes that asking an employee to respond to a charge of misconduct in writing represents a choice from among only two alternatives, the other one of which is verbal. Either response form could be made publicly or privately, but the Court notes further that a written response is inherently less pressured by time, is less intrusive, is less of a personal confrontation, is far easier for the employee to state in clear and appropriate language, and carries with it only a limited chance of being subjected to on-the-spot follow-up questioning. These attributes of written responses, at least within these circumstances, appear to us generally consistent with the maintenance of individual privacy interests
 
 
 [9]
 Here again, appellants attempt to bring forward new evidence on appeal, this time an indication that the Trustees chose not to discharge a fire chief following a guilty plea to a charge of stealing governmental property. They claim that this evidences their being denied equal protection under the law. As explained in the body of this section, a Trustees' decision not to discharge a fire chief would not be relevant to a determination of plaintiffs' rights under this count