**Kimberly GRANT, Plaintiff,**

v.

**SCHERING CORPORATION, Defendant.**

**No. C–1–91–318.**

United States District Court,
S.D. Ohio, W.D.

Nov. 8, 1993.

Gates Thornton Richards, Gates T. Richards Company, Cincinnati, OH, Aaron M. Levine, Washington, DC, for plaintiff.

Ralph Gary Winters, McCaslin, Imbus & McCaslin, Cincinnati, OH, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgement (doc. 16), the Plaintiff's Memorandum in Opposition (doc. 18), the Defendant's Reply (doc. 21), the Plaintiff's Response to Reply (doc. 22), and the Defendant's Citation of Additional Authority (doc. 24). A hearing was held on this matter on September 23, 1993.

### BACKGROUND

The Plaintiff brought this suit claiming various injuries allegedly caused by her *in utero* exposure to a synthetic hormone, Dienestrol ("DES"). In 1976, when the Plaintiff was 18 years of age, her mother took her and her two sisters to a doctor for an examination regarding the possible effects of DES exposure. The principal concern of the examination was the possible risk of cancer due to DES exposure.

In 1979, the Plaintiff had an examination of her cervix called a colposcopy which is de-

signed to closely examine the cervix for abnormalities. The Plaintiff was advised by the examining physician, Dr. Blackburn, that she had a "cervical hood" and precancerous cells in her cervix as a result of DES exposure.

In 1981, Dr. Blackburn again examined the Plaintiff and referred in his notes to the Plaintiff's "DES cervix". Dr. Blackburn performed cryosurgery to remove the precancerous cells caused by the DES exposure. In 1984 the Plaintiff returned to Dr. Blackburn's office at which time she expressed her concern over her getting pregnant due to the DES exposure. She noted that her sisters had also been exposed to DES, and that one of her sisters was unable to get pregnant.

In December 1986, prior to her marriage, the Plaintiff consulted Dr. Richard Oi, a specialist in the field of Obstetrics and Gynecology. Dr. Oi never examined the Plaintiff, although he did advise her of what she could possibly expect as a "DES progeny". She was advised, among other things, with respect to certain types of cancer prevalent in those exposed to DES *in utero*, as well as the possibility of reproductive difficulties. Dr. Oi concluded in his report that the Plaintiff informed him that she would discontinue use of contraceptives in anticipation of her marriage and her and her future husband's desire to have a child.

The Plaintiff had a spontaneous miscarriage in 1987, and went to a fertility clinic to begin fertility studies that same year. As part of her examination the Plaintiff stated on a questionnaire that she had been exposed to DES. In 1988, the Plaintiff completed an OB/GYN questionnaire at which time she indicated that she was having difficulty conceiving for 20 months. In her deposition the Plaintiff stated she assumed that her problems conceiving were due, in part, to the fact that her husband was out of the country as a result of his military service, and that "there was a point that we thought that we were missing because he would be gone at certain times."

On May 8, 1989, the Plaintiff again visited Dr. Oi to discuss possible reproductive difficulties due to her DES exposure. Dr. Oi stated in his report that he and the Plaintiff "just maintained a very brief visit and she will call us for further information regarding ... both her DES situation and for reproductive difficulties." Dr. Oi referred the Plaintiff to Dr. Kamras for examination. On September 25, 1989, the Plaintiff underwent an X-ray study of her uterus. The X-ray revealed a deformation of her uterus caused by her exposure to DES. This deformation was diagnosed as the cause of her inability to carry to term. The Plaintiff commenced this action on May 16, 1991.

The Defendant claims that the Plaintiff's claim is time barred under the applicable two-year Ohio statute of limitations. According to the Defendant, the statute of limitations began to run, at the latest, after her May 8, 1989 visit to Dr. Oi. Thus, the Defendant claims that the statute of limitations expired at the latest on May 8, 1991. As this law suit was filed on May 16, 1991, the Defendant argues, this law suit was untimely.

The Plaintiff claims on the other hand that she did not know that her inability to reproduce was caused by her DES exposure. She contends that her earlier cervical problems were relatively minor and successfully treated. Similarly, she claims that her husband's active military duty accounts for, at least in part, why she had been trying to conceive for 20 months without success. She contends that it was not until the results of her September 25, 1989 X-ray that she knew or should have known that she had any meaningful DES injuries causing her reproductive difficulties.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgement as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## ANALYSIS

In Ohio, a cause of action based on DES exposure accrues only when the plaintiff has been informed by competent medical authority that she has been injured by DES, or upon the date on which, by the exercise of reasonable diligence, she should have known

that she had been so injured. *Burgess v. Eli Lilly & Co.* 66 Ohio St.3d 59, 64, 609 N.E.2d 140 (1993). The statute of limitations in DES exposure cases is two years from the date the cause of action arose. *Id.* The Supreme Court of Ohio adopted this "discovery rule" based in part on its conclusion that DES plaintiffs should be able to pursue a remedy at a "meaningful time [and] in a meaningful manner," and not be forced to do so at an unreasonably early time. *Id.* at 63, 609 N.E.2d 140. Thus, adoption of the discovery rule in DES cases was to save DES plaintiffs from having to bring premature, or "questionable," law suits. *Id.*

In this case, the Plaintiff was aware that she had been exposed to DES. This alone, however, is not sufficient to trigger the running of the statute of limitations. *See id.* at 62–63, 609 N.E.2d 140. Similarly, the Plaintiff knew that she had been treated for some minor cervical abnormalities attributed to DES exposure. She did not know, however, until September 1989, that she had a deformed uterus due to DES exposure, much less that such deformity was the cause of her reproductive difficulties.

We conclude, that reasonable minds could differ as to whether she knew, or should have known that the injuries caused by DES were such that she could pursue a "meaningful" remedy prior to Dr. Kamras's September 25, 1989 diagnosis that her infertility was caused by DES. Furthermore, reasonable minds could differ as to whether the Plaintiff should have been on notice during the months that she was attempting to obtain pregnancy. The fact that her husband was out of the country on military duty during some of that time is relevant to a juror's conclusion as to whether a reasonable person should have concluded that her inability to obtain a successful pregnancy was due to her DES exposure or poor timing.

Similarly, the Defendant's place much emphasis on the May 8, 1989 meeting with Dr, Oi. However, the meeting with Dr. Oi was, according to his own notes, a very brief one, and that Plaintiff was to call him back to obtain further information about possible physicians who could see her regarding her problems. Thus, we are not persuaded that

the Plaintiff was, at that May 8 meeting, "informed by competent medical authority that she has been injured by DES," sufficient to start the running of the statute of limitations. Dr. Oi never examined the Plaintiff at that meeting or at any earlier one, but rather only advised her as to what a DES progeny could expect. She was thus not "informed" by Dr. Oi at that time or any time earlier that she had been injured by DES.

Again, we are not persuaded that, as a matter of law, the Plaintiff knew or should have known before her post-May 8, 1989 examinations by Dr. Kamras that she had been injured by DES to the point where she could have pursued a "meaningful remedy." *See Burgess* 66 Ohio St.3d at 64, 609 N.E.2d 140. Thus, we conclude that whether the Plaintiff knew or should have known that she was injured by DES is a question not appropriately resolved on this motion for summary judgement. *See Harper v. Eli Lilly & Co.,* 575 F.Supp. 1359, 1365 (N.D.Ohio 1983).

Finally, we note that the Defendant has cited cases from other districts interpreting the laws of other states. We are mindful that those courts read the "discovery rule" applicable to those states as requiring a cause of action to accrue as soon as the plaintiff was aware of any cervical injury. *See Holder v. Eli Lilly & Co.* 708 F.Supp. 672, 674 (E.D.Pa.1989). However, the Ohio Supreme Court in *Burgess* concluded that the discovery rule in DES cases should provide "an opportunity for remedy at a meaningful time and in a meaningful manner." We hold that reasonable jurors could differ as to whether the events prior to September 1989 were such that the Plaintiff was in fact provided the requisite opportunity to pursue a meaningful remedy at a meaningful time.

Accordingly, for the forgoing reasons, we hereby DENY the Defendant's Motion for Summary Judgement.

SO ORDERED.