Millecent **DICKSON**, Plaintiff,

v.

**BALL CORPORATION**, Defendant.

No. C–1–93–722.

United States District Court,
S.D. Ohio, W.D.

April 18, 1994.

David P. Kamp, White, Getgey & Meyer, Cincinnati, OH, for plaintiff.

Jerry S. Sallee, Dinsmore & Shohl, Cincinnati, OH, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION AND DENYING DEFENDANT'S MOTION

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's Motion to Dismiss or for Summary Judgment (doc. 4), the Plaintiff's Response to the Defendant's Motion and Cross-Motion for Summary Judgment (doc. 5), and the Defendant's Reply in Support of its Motion and Response to the Plaintiff's Cross-Motion for Summary Judgment (doc. 8).

### BACKGROUND

The Plaintiff, Millecent Dickson, is the Executrix of the estate of her late husband, Kenneth M. Dickson. Mr. Dickson ("the decedent") was employed by Heekin Can, Inc., which was merged into its successor, the Defendant Ball Corporation. The decedent worked for Heekin Can, Inc. for 42 years and held the position of Vice President of Procurement at the time of his death.

On April 28, 1987, the decedent and several other key employees of Heekin Can entered into a "Deferred Compensation Agreement" with the company. This agreement sought to provide key employees with benefits in the event that a change in control of the company occurred. The benefits were payable only if the employee was terminated within a designated period of time after a change of control or if the employee voluntarily left the company within a designated period following a change of control.

On December 1, 1992, in anticipation of a merger between Heekin Can and the Defendant Ball Corporation, the company and the decedent entered into a "Termination Agree-

ment." Under the Termination Agreement the decedent agreed to irrevocably tender his resignation, such resignation to become effective on the date the Certificate of Merger was filed with the Secretary of State, and also to forfeit his right to all benefits under the Deferred Compensation Agreement. In return for the decedent's resignation and the relinquishment of benefits under the Deferred Compensation Agreement, the company agreed to pay the decedent the maximum amount that it could pay an executive without suffering an adverse tax consequence under § 280G of the Internal Revenue Code, in this case, $387,000.59.

The Termination Agreement also contained a proviso that required the contemplated merger to be completed by April 1, 1993. If the merger did not occur by April 1, 1993, the Termination Agreement was to be deemed "cancelled" and the Deferred Compensation Agreement was to be "reinstated." *See* Termination Agreement, Exhibit C of the Complaint, Document 1.

The decedent died on February 12, 1993. The merger contemplated by the Termination Agreement took place within the time specified. The Certificate of Merger was filed on March 19, 1993.

The Plaintiff brought this suit seeking compensation for the decedent's estate under the Termination Agreement. The Defendant moved for dismissal, or, in the alternative, for summary judgment, claiming that the decedent was not entitled to anything under the Termination Agreement because he had died prior to the date of the merger. The Plaintiff responded with a cross-motion for summary judgment.

## STANDARD OF REVIEW

### Motion for Summary Judgment

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *Inter Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## ANALYSIS

■ The issue before the Court involves a question of contract interpretation. Consequently, we observe that "interpretation of written contract terms is a matter of law for initial determination by the court." *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991). Thus, "[i]t is only when the relevant contract language is ambiguous that the job of interpretation is turned over to the fact finder...." *Id.* We must, therefore, determine whether the agreements at issue in this case are ambiguous, and if they are not, determine whether the Defendant breached its agreement with the Plaintiff's decedent by refusing to pay benefits to his estate under the Termination Agreement.

■ As noted above, this dispute concerns two agreements, the Deferred Compensation Agreement and the Termination Agreement. The relevant facts are not in dispute. The Defendant claims that the Deferred Compensation Agreement governs the relationship between the parties and that the Termination Agreement cannot apply because it did not even come into existence until after the death of the Plaintiff's husband. The Plaintiff claims that the Termination Agreement was effective as of the date it was signed, that it governed the relationship between the parties, and that the Defendant must pay the benefits due under that agreement. We agree with the Plaintiff.

First, paragraph 1 of the Termination Agreement provides:

> *Term and Effective Time.* The Deferred Compensation Agreement shall terminate and be of no force or effect as of the date of the effective time ... provided, however, that if the effective time shall not have occurred prior to April 1, 1993, or, if sooner, upon termination of the merger agreement, then this Termination Agreement shall be deemed *cancelled* ... and of no force or effect, all rights and obligations to the parties hereunder shall forthwith cease, and a *Deferred Compensation Agreement. shall forthwith be reinstated.*

(Emphasis added). The Defendant argues that this provision should be interpreted to mean that the Deferred Compensation Agreement was in effect until the date of the merger. We disagree. Read as a whole the paragraph indicates that the Termination Agreement went into effect immediately upon its execution, and that only in the event that the merger did not occur within the required time would the Termination Agreement be cancelled and the Deferred Compensation Agreement would be reinstated. This is supported by the use of the term "cancelled" in reference to the Termination Agreement and by the use of the term "reinstated" in reference to the Deferred Compensation Agreement. If the Termination Agreement was not in effect it would not have to be cancelled, and likewise if the Deferred Compensation Agreement was in effect it would not have to be reinstated.

Further, both parties assumed "rights and obligations" under the Termination Agreement. The Plaintiff's decedent agreed to give up any claim to benefits under the Deferred Compensation Agreement and, in addition, tendered his irrevocable resignation which became effective on the date of the merger. The decedent had completed all of his obligations under the contract. All that was left was for the Defendant to pay the decedent or his estate the benefits agreed to under the Termination Agreement when the merger took place prior to April 1, 1993. This the Defendant failed to do.

Second, the Plaintiff's position is also supported by the language of paragraph 4 of the Termination Agreement which provides:

> *No Assignments.* This Termination Agreement is personal to each of the parties hereto.... [N]othing in this paragraph 4 shall preclude (i) Executive from designating a beneficiary to receive any benefit payable hereunder upon his death or (ii) the executors, administrators or other legal representative of Executive or his estate from assigning any rights hereunder to the person or persons entitled thereunto. Notwithstanding the foregoing, this Termination Agreement shall be binding upon and inure to the benefit of any successor corporation to the Company.

The Defendant argues that this paragraph means the contract was personal and that it

terminated upon the death of Plaintiff's decedent. This reading is contrary to the clear language of the paragraph. The paragraph clearly contemplates that the benefits provided under the Termination Agreement are to be paid to the estate of the executive in the event of death.

Most importantly, however, *no where in the Termination Agreement is there a requirement that the executive must survive until the date of the merger.* On the contrary, paragraph 4 of the agreement clearly contemplates payment of the benefits provided under the Termination Agreement to the estate of the deceased. The Defendant argues that this paragraph required survival until the date of the merger and that payment to the decedent's estate referred only to payments to be made after that date. We disagree. Neither the plain language of paragraph 4 nor any other paragraph supports the Defendant's claim.

Finally, even if the Court believed that the contracts were ambiguous, which we do not, it is a well-settled principle of contract interpretation that any doubt with respect to contractual terms is to be construed against the drafter, in this case the Defendant. *Sites v. Moore,* 79 Ohio App.3d 694, 700, 607 N.E.2d 1114, 1118 (1990). Thus, to the extent that the Defendant failed to insert more specific language in the Termination Agreement to the effect that the executive would not be entitled to benefits if he died prior to the consummation of the merger agreement, the Court will not so interpret the contract.

After careful consideration, the Court finds that under the plain language of these agreements the Plaintiff is entitled to recover. The Plaintiff's decedent had completed all of his obligations under the unambiguous language of the Termination Agreement, and nowhere in the agreement was the Plaintiff's decedent required to survive until the date of the merger.

## CONCLUSION

Accordingly, the Plaintiff's motion for summary judgment is GRANTED, the Defendant's motion to dismiss or in the alternative for summary judgment is DENIED, and judgment is entered for the Plaintiff in the amount of $387,000.59 plus interest.

SO ORDERED.