D. Karl MURPHY, Plaintiff,

v.

Deborah L. BRAY, et al. Defendants.

No. C–1–98–200.

United States District Court,
S.D. Ohio,
Western Division.

March 12, 1999.

Vincent James Lodico, Crabbe Brown Jones Potts & Schmidt—2, Columbus, OH, Michael Francis Lyon, Lindhorst & Dreidame—1, Cincinnati, OH, John Joseph Arnold, Shannon M. Reynolds, Hamilton County Proscuting Attorney, Monica M Saba, Hamilton County Prosecutor, Cincinnati, OH, for Deborah L. Bray, R.N., Dr. Jean–Claude Loiseau, Corrections Medical Systems, Inc., Simon L. Leis, Jr.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Simon L. Leis's Motion for Summary Judgment (doc. 18) and Plaintiff's Memorandum in Opposition to Defendant's Motion and Cross–Motion for Summary Judgment (doc. 21).

The Court held a hearing on this matter on March 4, 1999. As a preliminary matter, we note that this Order only addresses Defendant's Motion for Summary Judgment and Plaintiff's Memorandum in Opposition. Because Plaintiff's Cross–Motion for Summary Judgment will not be ripe before the trial date, and because Plaintiff's precarious health condition prevents any delays in the trial schedule, this Court

hereby RESERVES ruling on Plaintiff's Cross–Motion for Summary Judgment. The Court also hereby SCHEDULES a Final Pretrial Conference in this matter at 4:00 P.M. on March 25, 1999. The trial will begin at 9:30 A.M. on April 5, 1999.

## BACKGROUND

Plaintiff Devin Karl Murphy brings this action under 42 U.S.C. § 1983 against Defendants Deborah L. Bray, R.N., Dr. Jean–Claude Loiseau, Correctional Medical Systems, Inc. ("CMS"), Hamilton County Sheriff Simon L. Leis, Jr., and ten "John Doe" medical personnel and corrections officers who work at the Hamilton County Justice Center and who are yet to be identified. Defendant Ms. Bray is the Health Services Administrator for CMS at the Hamilton County Justice Center ("HCJC"). Defendant Dr. Loiseau also works for CMS at the HCJC.

This cause of action arose during Plaintiff's nine-day incarceration in 1997 at the Hamilton County Justice Center. Plaintiff was diagnosed with full-blown AIDS in 1992, and, because of his condition, Plaintiff takes a variety of prescription drugs (doc. 21). On November 5, 1997, Plaintiff was arrested and charged with importuning. At the time of his arrest, he was taking prophylactics for thrush, meningitis, herpes, medicine for depression, and a drug cocktail to inhibit the growth of the AIDS virus (*Id.*). Upon his arrival at the HCJC on November 5, a corrections officer asked Plaintiff about his medical problems and needs (doc. 18). Plaintiff informed the officer that he was HIV-positive and that he was taking several prescription drugs (*Id.*). The corrections officer then notified CMS medical personnel (*Id.*).

Medical personnel questioned Plaintiff on November 6, 1997 about his medications, but Plaintiff could not remember the names of the drugs (doc. 18). On November 7, 1997, CMS confirmed that Plaintiff has full-blown AIDS (*Id.*). At 11:45 a.m. that same day, during doctors

sick call, Defendant Dr. Loiseau met with Plaintiff and obtained the names of Plaintiff's treating physician and home health care nurse (doc. 21). Dr. Loiseau wrote an order in the medical chart stating, "Okay to have all his medication brought from home and to start them as directed. Obtain listing of medications from the visiting nurse [Debbie Green] or [treating physician] Dr. Dunn." (*Id.*, citing Loiseau Dep. at 44). At 6:29 p.m. on November 7, Plaintiff's home health care nurse, Ms. Green, faxed a complete medical profile with the names and dosages of Plaintiff's medications to CMS (*Id.*, citing Green Dep. at 43–45 and Plaintiff's Dep. at Exh. 9).

After meeting with Defendant Dr. Loiseau, and pursuant to Dr. Loiseau's written order, Plaintiff called his companion, Corey Perry, and told him to bring his medications to the HCJC (doc. 21). Mr. Perry brought the medications to the HCJC at 4:45 p.m. on November 7, but a guard at the HCJC would not allow Mr. Perry to give Plaintiff the medications (*Id.; see also* doc. 18, citing Plaintiff's Dep. at 69–70). Both Defendant CMS and Defendant Leis have written policies specifically prohibiting inmates from having prescription medicine brought from their homes (doc. 21). Once Plaintiff learned he could not receive the medications from Mr. Perry, Plaintiff alleges that he filled out a CMS Health Service Request Form ("the form") to inform CMS of the problem. Plaintiff also asserts that a psychiatric social worker at the HCJC returned the form to him on November 10, 1997 without explanation (*Id.*). Defendant Leis asserts that his office records do not contain any evidence that Plaintiff filled out this form or made any other complaint to corrections officers or other employees at the HCJC (doc. 18).

Plaintiff did not receive his medications during his entire incarceration, which continued from November 5 to November 13, 1997, despite the delivery of the medication from home under Defendant Dr. Loiseau's orders and the complete medical

profile provided by Plaintiff's home health care nurse on November 7 (doc. 21). Notwithstanding the written policies of Defendant CMS and Defendant Leis, Plaintiff argues that Defendant Dr. Loiseau allowed Plaintiff to obtain the medications from home because a custom had developed that sanctioned this process. (*Id.*). According to Plaintiff, Defendants Dr. Loiseau, Deborah Bray, and Sheriff Leis knew that a custom had developed in direct contradiction to the written policy and that the rules and implementation of the custom were not uniformly defined (*Id.*). In other words, while one corrections officer would allow medications to be brought to an inmate, another would not (*Id.*).

Plaintiff sued Defendant Sheriff Leis in his official capacity contending that Defendant Leis failed to provide a constitutionally adequate system of medical care at the Hamilton County Justice Center. Plaintiff's Complaint specifically alleges (1) the system of providing medical care to inmates of the HCJC, including the system of providing continuity of medical care and/or assessing medical care at the HCJC, is constitutionally inadequate; (2) incidents of HCJC inmates denied adequate medical care or who have difficulty accessing medical care are not properly investigated, nor are the corrections officers or CMS employees properly disciplined; and (3) Hamilton County, through its policymaker Defendant Leis, acquiesced in and/or ratified the custom of failing to provide a constitutionally adequate system of medical care to inmates of the HCJC (docs. 1 & 21).

Defendant Leis filed a Motion for Summary Judgment on February 12, 1999 (doc. 18), arguing that Plaintiff cannot demonstrate (1) that Defendant Leis is liable for ratifying and/or acquiescing in an unconstitutional policy or custom that resulted in a constitutional deprivation; or (2) that Defendant Leis was deliberately indifferent to the inadequacy of his training program and this indifference resulted in the constitutional deprivation.

Plaintiff responded with a Memorandum in Opposition and a Cross Motion for Summary Judgment on March 1, 1999 (doc. 21). In his Response, Plaintiff contends that Defendant Sheriff Leis is the policymaker responsible for the care and treatment of inmates at the HCJC; that an unconstitutional custom existed at the HCJC and this custom and its risk of harm to inmates was known to Defendant Leis; that Defendant Leis was deliberately indifferent to the risk of harm by failing to train his corrections officers to properly implement the custom in order to assure continuity of care; and that Plaintiff was harmed by Defendant Leis's deliberate indifference.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for

trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

■ In Defendant Sheriff Leis's Motion for Summary Judgment, Defendant argues that Plaintiff failed to raise genuine issues of material fact that would allow a factfinder to conclude he is liable under 42 U.S.C. § 1983. Under § 1983, Plaintiff must prove (1) that the challenged conduct was committed by a person acting under the color of state law, and (2) that the conduct "caused" a deprivation of a person's rights or privileges secured by the laws or Constitution of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). As this is an official-capacity suit, Plaintiff must also show that a policy or custom attributable to a government entity caused his injury. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dep't of Social Servs.,*

436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A custom is defined as a practice that, while not expressly authorized, "is a legal institution that is permanent and established." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993) (citing *Monell,* 436 U.S. at 691, 98 S.Ct. 2018).

■ In this case, Plaintiff alleges that "Defendants' system of providing medical care to inmates of the HCJC, including the system of providing continuity of medical care and/or accessing medical care at the HCJC, is constitutionally inadequate" under the Eighth Amendment (doc. 1). The U.S. Supreme Court holds that a prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment. *See Helling v. McKinney,* 509 U.S. 25, 31–32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Thus, to sustain such a claim under § 1983, Plaintiff must prove that Defendant acted under color of state law with a deliberate indifference to Plaintiff's serious illness. *Estelle,* 429 U.S. at 104–105, 97 S.Ct. 285. An "inadvertent failure to provide adequate medical care" does not constitute a § 1983 violation, nor does proof of negligence in the diagnosis or treatment of a medical condition. *Id.* at 105–106, 97 S.Ct. 285; *see also Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

■ Therefore, Plaintiff must show that Defendant Leis had "a culpable state of mind" rising to the level of "deliberate indifference." *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321. Deliberate indifference is demonstrated when the government official "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The official

must subjectively "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* According to the Sixth Circuit, a jury may infer deliberate indifference when a plaintiff presents "strong evidence of a pervasive pattern of deliberate indifference to the inmates' medical needs generally." *Hill v. Marshall,* 962 F.2d 1209, 1213–14 (6th Cir.1992); *see also Ribble v. Lucky,* 817 F.Supp. 653, 658–59 (E.D.Mich.1993). In addition, deliberate indifference may be inferred by circumstantial evidence that the official was exposed to information concerning the risk. *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970.

Defendant Leis contends that Plaintiff fails to raise any genuine issues of material fact to indicate that Defendant Leis acted with deliberate indifference to Plaintiff's illness. In his Motion for Summary Judgment, Defendant Leis states that the HCJC policies "are in conformity with the minimum standards for full service Jails in Ohio" (doc. 18), and that the National Commission on Correctional Health Care recently found that the policy regarding inmate medical screening satisfied its standards. Defendant Leis further alleges that CMS is the "sole authority to render medical treatment to inmates, and to prescribe and give medication to inmates" (doc. 18), and that his office records do not contain any indication that Plaintiff filed a complaint regarding a denial of medical care during Plaintiff's incarceration. At most, Defendant Leis asserts, the facts relating to CMS's failure to acknowledge a fax from Plaintiff's home health care nurse states a claim for negligence, and negligent medical treatment does not constitute a § 1983 violation.

■ In Plaintiff's Response, Plaintiff contends that he can show (1) that Defendant Leis acted under color of state law and (2) that Defendant Leis acted with deliberate indifference to his serious illness. First, Plaintiff asserts that Defendant Leis is the ultimate decisionmaking authority for the HCJC and that he cannot escape liability by contracting out medical care to professionals. *See West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir.1993); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1250 (6th Cir.1989). Second, Plaintiff alleges that evidence exists to show that Defendant Leis knew a custom had developed in contradiction to his written policy and that this custom was "implemented haphazardly with no cross-checks or safeguards" (*see* March 4, 1999 Hearing Transcript). The evidence demonstrates, Plaintiff contends, that Defendant Leis knew the custom presented a risk of harm to Plaintiff's, and other inmates', safety, and that Defendant Leis failed to alleviate this risk through adequate training.

Specifically, Plaintiff proffers the depositions of Defendants Ms. Bray and Dr. Loiseau, who testified that a custom had developed allowing inmates to bring medications from home (Loiseau Dep. at 44–47; Bray Dep. at 81–85). Moreover, Plaintiff points to Defendant Ms. Bray's statements that "there were incidents where [family members brought medications to the facility and were refused]. So we needed to fine-tune the policy as to where the medications went, who got the medications" (Bray Dep. at 85). Plaintiff further alleges that Defendant Leis, or his designee, met regularly with Defendant Ms. Bray to discuss health care services within the HCJC (Bray Dep. at 11–12), and that Defendant Ms. Bray specifically discussed the need to "fine-tune" the custom with Defendant Leis's designee (Bray Dep. at 85).

Plaintiff also asserts that, while it would be "simple" to "fine-tune" the custom by instructing corrections officers to call contact medical personnel when a family member brought an inmate's medications to the HCJC, Defendant Leis failed to do so (doc. 21). Additionally, Plaintiff states that his expert, Dr. Lisa M. Keamy, found that "[t]he custom that developed at the

HCJC was not uniformly understood, was not uniformly applied, and no reasonable effort was made to assure that the custom actually worked in all situations" (Keamy Aff. at ¶ 11).

After reviewing the facts in a light most favorable to the non-moving party, this Court finds that Plaintiff raises a genuine issue of material fact as to whether Defendant Leis knew of and disregarded an excessive risk of harm presented to Plaintiff by the custom at the HCJC. Accordingly, we hereby DENY Defendant Simon L. Leis's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, we hereby DENY Defendant Simon L. Leis's Motion for Summary Judgment and RESERVE RULING on Plaintiff's Cross–Motion for Summary Judgment.

SO ORDERED