John C. **GREEN**, Plaintiff,

v.

**ROSEMONT INDUSTRIES, INC.**, Defendant.

No. C-1-94-784.

United States District Court, S.D. Ohio, Western Division.

April 17, 1998.

---

Randolph Harry Freking, Freking & Betz—1, Cincinnati, OH, Christopher Eli Kraus, Freking & Betz, Cincinnati, OH, for Plaintiff.

John Green, Cincinnati, OH, pro se.

John Bjork Cornetet, Lutz Boster & Cornetet, Cincinnati, OH, Karen P. Meyer, Cincinnati, OH, Robert Forsythe Croskery, Lutz Cornett Albrinck, Cincinnati, OH, for Defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 28), Plaintiff's Motion for Mixed Motive Designation and Response to Defendant's Motion for Summary Judgment (doc. 33), Defendant's Reply and Response to Plaintiff's Motion for Mixed Motive Designation (doc. 48), Plaintiff's Reply to his Motion for Mixed Motive Designation (doc. 49), and Plaintiff's Motion for a New Trial Date (doc. 46).

## BACKGROUND

This is an employment discrimination case brought by Plaintiff, John C. Green, against his former employer, Defendant Rosemont Industries, Incorporated ("Rosemont"), alleging that Rosemont discriminated against him on the basis of his disability and race by terminating his employment. In the Amended Complaint, Plaintiff asserts the following causes of action against Rosemont: disability discrimination under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and Ohio Revised Code Chapter 4112; race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Ohio Revised Code Chapter 4112; and claims for public policy tort, breach of contract, promissory estoppel, and breach of covenant of good faith and fair dealing under Ohio law.

Mr. Green, an African–American, began his employment with Rosemont on May 15, 1993 as a laborer. Rosemont is a small corporation that employs approximately thirty-five (35) workers. The company is in the business of making abrasive media used in various manufacturing enterprises. The job category of laborer required physical exertion such as picking up and moving scrapings.

In early September, 1993, Mr. Green underwent a hernia operation. He could not work for a total of approximately four to five weeks thereafter due to the surgery. When Mr. Green did return to work after the operation, he brought with him an excuse slip from his doctor prohibiting "heavy lifting." Because Rosemont did not have any positions of "light duty" in Mr. Green's department, Mr. Green was sent home in accordance with company policy until such time as he could perform · his job. Mr. Green returned to work with no restrictions approximately two to three weeks later in early November 1993.

· On or about January 13, 1994, Mr. Green left the premises at Rosemont in the early afternoon. The reason for his leaving that day is disputed: Mr. Green's Amended Complaint maintains that he left for medical reasons, (Am.Compl.¶ 22); he apparently told his supervisor that he left to tend to his sick grandmother, (Byrd Aff. ¶ 19); and he apparently went to an alcoholism treatment center that same day, (Green Dep. at 68). Although Mr. Green contends that he did telephone the company, Rosemont's records indicate that Mr. Green did not call in during the time he was off. (Green Dep. at 34; Byrd Aff. ¶ 21.) When Mr. Green returned to work approximately six days later, Rosemont informed him that his employment had been terminated in accordance with company policy which provided that missing three consecutive work days without a valid excuse or phone call would result in termination. (Byrd Aff. at ¶¶ 23, 25.)

Mr. Green filed a complaint with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging only that he had been unlawfully discriminated against because of his disability. (Def.'s Ex. 13, Attach. to Green Dep.) The OCRC issued a "Notice of Right to Judicial Review" after Mr. Green informed them that he wished to withdraw the charge and to request a Right to Sue Letter. (Pl.'s Ex. 14; doc. 33.) He then filed this lawsuit alleging that Rosemont discriminated against him on the basis of his hernia disability and his race.

Before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Mixed Motive Designation. The Court heard oral arguments on these motions on January 29, 1998.

 Initially, we note that during the hearing, counsel for Mr. Green conceded that the race discrimination claim under Title VII was not viable because Mr. Green did not file a charge with the OCRC/EEOC alleging race discrimination and thus did not receive a Right to Sue Letter regarding the charge of race discrimination. A person alleging a violation of Title VII must exhaust his administrative remedies before suing in federal court. *Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). An administrative charge of discrimination must be timely filed with the EEOC before a plaintiff can bring a Title VII action in federal court. 42 U.S.C. § 2000e–5(e); *Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.,* 24 F.3d 836, 839 (6th Cir. 1994). Accordingly, we GRANT Defendant's Motion for Summary Judgment with respect to Count IV of the Amended Complaint (Race Discrimination under Title VII) and DISMISS Count IV of the Amended Complaint.

In its Motion for Summary Judgment, Rosemont principally argues that Mr. Green is not an individual with a disability as defined by the ADA. For the reasons set forth in the analysis below, we agree and hold that Mr. Green is not disabled as defined by the ADA.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

### I. General Analysis Under The ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C.A. § 12112(a) (West 1995). The primary contention raised by Rosemont in its motion for summary judgment is that Mr. Green is not a "qualified individual with a disability" as defined by the ADA. The ADA provides that a "qualified individual with a disability" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8) (West 1995).

Therefore, to prevail on an ADA claim, Mr. Green must prove that "(1) [he] has a disability; (2)[he] was qualified for the job; and (3)[he] either was denied reasonable accommodation for [his] disability or was subject to an adverse employment decision that was made solely because of [his] disability." *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996).

### II. Whether Mr. Green Has Demonstrated A Prima Facie case Of Disability Discrimination

To establish a prima facie case of disability discrimination, Mr. Green must make the threshold showing that he is in fact disabled as defined by the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C.A. § 12102(2) (West 1995). Mr. Green asserts that he is disabled because he has a record of having a disability—that is there is a record of his having suffered a hernia and undergone a hernia operation—or in the alternative, because Rosemont regarded him as being disabled due to his hernia operation. Rosemont argues that Mr. Green is not disabled because his hernia did not substantially limit a major life activity.

Under either definition, Mr. Green still has to prove that a hernia is a disability that substantially limits a major life activity. That is, he must prove that either Rosemont had a record of his impairment that substantially limited a major life activity, or that Rosemont regarded him as having an impairment that substantially limits a major life activity. Therefore, the first issue before the Court is whether Mr. Green's hernia and operation substantially limits a major life activity.

### A. Whether Mr. Green had a physical impairment that substantially limited a major life activity

■ Rosemont appears to concede that Mr. Green suffered from a physical impairment but contends that the impairment did not substantially limit a major life activity. Mr. Green asserts that his hernia substantially limited his ability to lift.

The ADA does not define "major life activities"; however, the regulations promulgated by the EEOC define "major life activities" as the basic activities that the average person can perform with little or no difficulty such as "walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). The appendix to § 1630 states that "other major life activities include, but are not limited to sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630 App.

"Substantially limits" means either the inability to perform a major life activity, or a significant restriction on a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). The EEOC regulations provide that, in determining whether an individual is substantially limited in a major life activity, a court should consider: 1) the nature and severity of the impairment; 2) the duration of the impairment; and 3) its long term impact. 29 C.F.R. § 1630.2(j)(2). Generally, short term restrictions are not substantially limiting. *Roush*, 96 F.3d at 843. "[T]emporary, non-chronic impairments of short duration, with little or no long term impact, are usually not disabilities." 29 C.F.R. Pt. 1630 App.; *see also Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir.1996) (holding that an impairment lasting three and one half months with no residual effects was not of sufficient duration to fall within the protections of the ADA); *McDonald v. Pennsylvania Dep't of Pub. Welfare, Polk Center*, 62 F.3d 92, 97 (3d Cir. 1995) (finding no claim for disability discrimination under the ADA where inability to work due to surgery was of limited duration). As an illustration, the EEOC guidelines indicate that "a broken leg that takes eight weeks to heal is an impairment of fairly brief duration." 29 C.F.R. Pt. 1630 App.

Mr. Green asserts that the disability which substantially limited one of his major life activities was his hernia. The undisputed evidence in the case before us indicates that Mr. Green underwent hernia surgery in early September 1993. He was excused from work for the operation and for two weeks thereafter. When Mr. Green returned to work with the lifting restriction, Rosemont sent him home. Approximately two to three weeks later when his lifting restriction expired in early November 1993, Mr. Green returned to work with no lifting restrictions. He then worked for Rosemont under normal conditions, except for occasional assistance by co-workers, until he was terminated in January 1994. Mr. Green's hernia only significantly affected his lifting ability for approximately six to eight weeks. His temporary condition of a hernia persisted for even less or the same time as that offered as a guideline by the EEOC. At least one court has found the impairment of a hernia to be "within the category of 'temporary, non-chronic impairments of short duration' that the EEOC has deemed beyond the coverage of the ADA." *Gonzalez v. Perfect Carton Corp.*, No. 95 C 5476, 1996 WL 89058, at *2 (N.D.Ill. Feb.28, 1996) (quoting 29 C.F.R. Pt. 1630 App.). We agree and accordingly hold Mr. Green's hernia was not of sufficient duration to fall within the protections of the ADA as a disability.

Viewing the evidence in a light most favorable to Mr. Green, we conclude that no reasonable jury could find that his hernia, which was of temporary duration, substantially limited a major life activity. Thus, Mr. Green did not have a record of having a physical impairment that substantially limited a major

life activity, and therefore is not disabled under the ADA.

### B. Whether Mr. Green was "regarded as" having a physical impairment that substantially limited one or more of his major life activities by Rosemont

Mr. Green argues in the alternative that he is disabled as defined by the ADA because Rosemont regarded him as being disabled. Under the ADA, an "individual with a disability" includes "persons who have impairments that are not substantially limiting, but who are regarded by their employers as substantially limiting." *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 884 (6th Cir.1996). The applicable regulations indicate that there are three ways a plaintiff can show that he is "regarded as" having a disability:

(1) The individual may have an impairment which is not substantially limiting but is perceived by the employer ... as constituting a substantially limiting impairment;

(2) the individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

(3) the individual may have no impairment at all but is regarded as by the employer ... as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). To prove an employer regarded an employee as having a disability the "plaintiff must show that the perceived impairment is a substantial limitation in a major life activity." *Kocsis*, 97 F.3d at 885 (quoting *Schluter v. Indus. Coils, Inc.*, 928 F.Supp. 1437, 1448–49 (W.D.Wis.1996)).

In support of his "regarded as" theory, Mr. Green alleges that Rosemont entertained stereotypical notions that employees with lifting restrictions are a liability threat. The only evidence of this contention that Mr. Green cites is Rosemont's Plant Supervisor's deposition testimony:

A. It would be burdensome on the company if you allow somebody to come in there and work that's got a restriction and all they've got to do is lift something heavy and there you go.

Q. What do you mean—

A. If I let somebody come in there and go to work and they've got a restriction, then you're liable for suit if they get hurt or injured.

(Byrd Dep. at 17.)

Rosemont's awareness of the hernia operation and of the lifting restrictions does not prove that Rosemont regarded Mr. Green as disabled. As discussed above, a hernia is not a significant impairment but a temporary condition. Mr. Green alleges no facts that suggest that a hernia is generally viewed, or viewed by Rosemont, as substantially limiting or non-temporary. Mr. Byrd's testimony merely indicates a desire to follow the restrictions placed on Mr. Green by his doctor during the time Mr. Green was under the restrictions. The evidence carries even less weight when viewed in light of the fact that Rosemont permitted Mr. Green to return to work when the lifting restriction expired and that Mr. Green worked at Rosemont approximately two months after his hernia recovery and before being terminated. Mr. Green has failed to establish the next logical step in carrying his burden that Rosemont perceived this restriction as substantially limiting a major life activity. At most, the evidence establishes that Rosemont regarded Mr. Green as suffering a temporary impairment, but not a disability.

Moreover, several courts have held "that an employer does not necessarily regard an employee as [disabled] simply by finding the employee as being incapable of satisfying the singular demands of a particular job." *Forrisi v. Bowen*, 794 F.2d 931, 934 (4th Cir. 1986) (cited with approval in *Kocsis*, 97 F.3d at 885). The record before us indicates that Rosemont perceived Mr. Green as being temporarily barred from work that required heavy lifting. Rosemont allowed Mr. Green returned to his job when the restriction expired.

The allegations by Mr. Green fall short of offering significant probative evidence that Rosemont regarded him as disabled. Instead, Mr. Green invites mere speculation on the issue, which is insufficient to survive summary judgment. In sum, Mr. Green has

**574**

failed to meet his burden of showing that he was "regarded as" disabled by Rosemont.

## CONCLUSION

For the forgoing reasons, we conclude that on this record, a reasonable jury could not conclude that Mr. Green was "disabled" under either of the two definitions in the ADA. Thus, Mr. Green cannot establish the first prong of a prima facie case of disability discrimination. Our analysis of Mr. Green's ADA claim is applicable to his claim under O.R.C. § 4112. *See Wohler v. Toledo Stamping & Mfg. Co.,* No. 96–4187, 1997 WL 603422, at *2 n. 5 (6th Cir. Sept.30, 1997) (stating that because the essential elements of a claim under the ADA and Ohio's disability discrimination statutes are the same, the court's analysis of the ADA claim resolves the disability discrimination claim under Ohio law).

The foregoing analysis also disposes of the need to address Plaintiff's argument that he was not provided a reasonable accommodation because we need not reach the third prong of the prima facie case where, as here, Plaintiff has not satisfied the first prong. Moreover, having dismissed the disability and race discrimination claims under federal law, we need not address Plaintiff's Motion for Mixed Motive Designation.

Accordingly, we GRANT Defendant's Motion for Summary Judgment, and we DENY AS MOOT Plaintiff's Motion for Mixed Motive Designation and Plaintiff's Motion for New Trial Date. We therefore DISMISS Count I, Count II, and Count V of Plaintiff's Amended Complaint WITH PREJUDICE. Having dismissed the two federal question claims of Plaintiff's Amended Complaint, we decline to exercise supplemental jurisdiction over the remaining state claims in the Amended Complaint. Therefore, Count III, Count V, Count VI, and Count VII of the Amended Complaint are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

SO ORDERED.