NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0324n.06

No. 12-4015

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Apr 02, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALAN L. BLOSSER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| AK STEEL CORPORATION, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:  KEITH, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Alan Blosser appeals a district court order granting AK Steel Corporation's motion for summary judgment on all of Blosser's claims.  Blosser alleges that he was terminated from AK Steel in retaliation for taking medical leave under the Family and Medical Leave Act to receive treatment for a brain tumor, in retaliation for sending an email to a human-resources manager in which he sought to ensure that he would not be treated unfavorably for taking medical leave, and because he had a record of disability or was regarded as being disabled following his tumor removal.  Because Blosser does not raise any genuine issue of material fact with respect to his prima facie case, the district court properly granted AK Steel's motion for summary judgment.

In July 2007, AK Steel hired Blosser as a senior engineer, an "at-will" employee, at the blast furnace in Middletown Works.  He came under the supervision of Larry Schutte, who received complaints of Blosser's poor performance from blast furnace department manager Jerry Sherman

and blast furnace outage project manager Steve Palmer. Schutte informed Blosser that his performance was not meeting expectations and told him that he would need to improve. On one occasion, Schutte indicated that the cost and time associated with one of Blosser's projects was "getting out of hand" and that Blosser's projects were not progressing as expected. Nevertheless, Blosser continued having problems and failing to meet the expectations of Schutte and other supervisors at AK Steel.

On August 31, 2008, Blosser learned that he had a brain tumor that would require surgery. He informed his superiors of his diagnosis and told them he would need to take a medical leave of absence to undergo surgery and recovery. Maurice Reed, AK Steel's general manager of engineering, told him to get treated, and AK Steel granted Blosser's requested leave with salary continuation. Blosser had surgery in September 2008 and stayed in West Virginia during his recovery to be near his family. In late September, Blosser told Schutte via email that Blosser intended to return to work in December, but planned to close his apartment in Middletown because the value of the contents was not worth the two to three months of rent, and he was no longer under his initial year-long lease. Schutte asked Blosser if he needed any help moving his things out of the apartment, but Blosser's brother eventually helped Blosser vacate the apartment.

Blosser's physician fully released him to return to work with no restrictions on November 19, 2008, and AK Steel reinstated Blosser with no restrictions when he returned to work on December 1. At that time, Blosser acknowledged that he had no physical or mental impairments that would affect his ability to perform his job at the company. Blosser acknowledges that he is not

currently disabled. After Blosser returned to work, he failed to improve his performance. Schutte

saw no improvement and wrote, in his 2008 annual evaluation of Blosser:

> I have only been Al's supervisor for 7 months before his extended time off for health
> reasons. . . . Feedback from the BF Department has not been positive. He expressed
> an interest in taking over the Infrastructure work that Rich Dugan previously did,
> however this has not been a successful transition. None of the reassigned projects
> have been completed to date. Al will generally do what you ask him to do, however
> what is required from a Senior Engineer is a self initiated approach to problem
> solving and willingness to aggressively complete project assignments. This is
> lacking in Al's daily work habit.

Schutte rated Blosser as "below satisfactory" in seven of ten performance sections, including "job

knowledge, planning, control, management of resources, decision-making, communications (oral

and written), and current performance." Schutte explained his ratings by writing, "Al is slow to

assume the responsibilities of the Infrastructure work for Middletown Works. . . . [He is] not

aggressive enough. . . . The quantity and difficulty of the projects that Al has been assigned is lower

due to the length of time he has taken to work on them. . . . [He] has not achieved the desired

improvement in response time." When Schutte and Blosser met to discuss the evaluation, Blosser

blamed any substandard performance on his recent medical problems.

Meanwhile, the 2008 recession seriously affected AK Steel's revenue and customer orders.

As a result of adverse economic conditions and decreasing revenues, and despite cost-cutting

measures to avoid forced layoffs, AK Steel concluded that involuntary layoffs were necessary and

required every department, including the engineering department, to cut its work force by fifteen

percent in January of 2009. Prior to the January 2009 reduction in force, AK Steel managers had

been asked to consider possible candidates for layoff. Schutte and Ken Boesherz, another AK Steel

supervisor, had composed a list of Middletown employees for the reduction in force, taking into consideration three main criteria: seniority, job performance, and uniqueness of skills. They included Blosser on their list of recommended layoffs. Blosser had less than two years of service and was the most junior employee in Middletown's engineering department. His performance review had not been positive, and he did not possess unique work skills. Reed agreed with their recommendation for the same reasons, and Blosser was included among the 115 salaried individuals selected for layoff. On January 8, 2009, the layoffs were announced to AK Steel employees.

Three days later, on January 11, Blosser sent an email to human-resources manager Kelly Nelson, indicating that he "felt fine" but wished to "add some comments" to his prior job evaluation. He suggested that his former "medical condition was not taken into consideration" and that "I wish to not have that repeated going forward, if the problem returns." Nelson reviewed the email and forwarded it to her supervisor, Phyllis Short, as well as Schutte and Boesherz. Blosser later admitted that he sent this email in an attempt to avoid being laid off. On January 19, 2009, AK Steel notified Blosser that he would be laid off as part of the reduction in force. Blosser's job was temporarily eliminated on January 20, and his termination became permanent as of June 8, 2009. According to Nelson and Schutte, AK Steel did not hire any new engineers with Blosser's qualifications at the Middletown Works after the 2009 reduction in force.

On June 1, 2010, Blosser filed suit in federal district court, alleging retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), and retaliation and disability

discrimination under the Ohio Civil Rights Act, Ohio Rev. Code § 4112. After discovery, AK Steel moved for summary judgment, which the district court granted on all of Blosser's claims.

With respect to Blosser's FMLA-retaliation claim, the district court determined that Blosser had not established a causal connection between his FMLA leave and the adverse employment action, being terminated from AK Steel. The district court noted that Blosser relied primarily on the temporal proximity, which was "not particularly close" in this case because four months elapsed between Blosser's leave and the reduction in force. *Blosser v. AK Steel Corp.*, No. 1:10-cv-359-HJW, 2012 U.S. Dist. LEXIS 106777, at *21-22 (S.D. Ohio July 31, 2012). Blosser also pointed to two comments—Schutte's email comment offering to help Blosser empty out his apartment, and Schutte's comment in Blosser's 2008 evaluation that Blosser was "the same old Al" after returning from leave—as additional evidence of a causal connection. But the court concluded that both comments were "innocuous" and "benign," and no rational juror could possibly infer a causal connection demonstrating retaliation. *Id.* at *23-24.

The district court also rejected Blosser's state-law claim that he was terminated in retaliation for emailing Nelson. The court assumed without analysis that Blosser's email to Nelson was protected activity under Ohio law. But the court again concluded that Blosser had not established a causal connection between that protected activity and his termination as part of the reduction in force, because the decision to terminate his position was made three days earlier. The district court similarly rejected Blosser's disability-discrimination claim. The court noted that Blosser admitted he was not disabled, because he was medically cleared to return to work without mental or physical

limitation, and that he did not request or need any accommodation. The court also emphasized that AK Steel would have permanently eliminated Blosser's job regardless of his alleged disability because of its declining economic fortunes. In the district court's view, Blosser also failed to provide sufficient evidence to convince any rational juror that he had a record of disability or that AK Steel perceived him to be disabled upon his return.

Finally, the district court determined that even if Blosser established a prima facie case for any of his claims, AK Steel articulated legitimate, nondiscriminatory reasons for terminating Blosser's employment, and Blosser had not shown that those reasons were pretext. The court found that Blosser raised no genuine issue of material fact as to whether AK Steel terminated Blosser as part of an economically necessary, company-wide reduction in force, and that it selected Blosser for termination because of his lack of seniority, poor job performance, and nonunique skills.

Blosser now appeals the district court's judgment. We review the district court's grant of summary judgment *de novo*, with all reasonable inferences drawn in Blosser's favor as the nonmoving party; summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012).

Blosser has failed to raise any genuine issue of material fact with respect to his prima facie FMLA retaliation claim because he has not shown a causal connection between his termination and medical leave. To establish a prima facie case of FMLA retaliation, Blosser must show that (1) he engaged in an activity protected by the FMLA; (2) AK Steel took an adverse employment action

against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *Id.* at 842. The only issue on this aspect of Blosser's appeal is whether he has established causation.

Blosser first relies on the temporal proximity between his medical leave and termination to establish a causal connection. Blosser went on leave at the beginning of September 2008 and was terminated on January 20, 2009, a period of approximately four months.[1] Sixth Circuit precedent indicates that "[p]roximity in time can raise a prima facie case of retaliatory discharge, [b]ut *proximity alone may not survive summary judgment*, nor does it necessarily imply causation." *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002) (internal citations omitted) (emphasis added). Blosser's case is distinguishable from those cases in which we have found that plaintiffs established causation based on temporal proximity alone. In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), we discussed the distinction:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the *employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality*. The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened

---

[1] We have typically found that the causal connection element is met only where the "adverse employment action occurred within a matter of months, or less, of the protected activity." *Gambill v. Duke Energy Corp.*, 456 F. App'x 578, 589 (6th Cir. 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)).

consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

*Id.* at 525 (emphasis added) (internal citation omitted). Blosser's case falls in the latter category, where a plaintiff must couple temporal proximity with other evidence to show causation. Although Blosser advances additional evidence linking his medical leave to his termination, the evidence he cites is insufficient to establish causation because the interpretation Blosser gives the evidence strains credulity. First, Blosser points to the comment Schutte made in which Schutte offered to help Blosser move out of his Middletown apartment. Blosser suggests that this comment indicated "a desire that [Blosser] not return to Middletown." Blosser points to Schutte's asking whether Blosser needed help "moving out" instead of "moving things" from his apartment. Blosser suggests that this created "a reasonable inference of permanence and leaving the area." Blosser's interpretation of this passing comment is unreasonable and does not support his argument for causation.

Blosser points to a second comment as further evidence of causation. Shortly after Blosser returned to work, Schutte commented that Blosser was "the same old Al" and was not the "ball of energy" that Schutte expected to see. Blosser contends that a reasonable juror could conclude that this comment was aimed not at his work performance but instead at his medical impairment because the comment supposedly demonstrated Schutte's resentment that Blosser's period of leave had been "unproductive" in resolving Blosser's medical issues. This reading of Schutte's comment, when considered in context, is unreasonable. Schutte's comment, on its face, reflects an evaluation of Blosser's work performance. We fail to find any support for Blosser's argument that the comment

was critical of Blosser's decision to take medical leave and seek treatment. Although when reviewing a district court's grant of summary judgment, we "must draw all reasonable inferences in favor of . . . the nonmoving party," we "need not make assumptions that strain credulity." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 323 (6th Cir. 2012). Blosser's proposed interpretation would require the court to make assumptions that strain credulity.

Blosser also argues that public statements by AK Steel's Chairman, President and CEO, James Wainscott, criticizing the Ohio Healthy Families Act provided additional evidence of a causal link. Despite Blosser's contention that Wainscott's remarks "evidence a corporate state of mind against providing benefits to employees" of AK Steel, AK Steel granted Blosser all the medical leave he requested, and the record does not support Blosser's subjective belief that there was an anti-benefits attitude at AK Steel. Blosser errs in relying on *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), because that case stands for the proposition that "[d]iscriminatory statements may reflect a cumulative managerial attitude . . . that has influenced the decisionmaking process for a considerable time." *Id.* at 356. Blosser has not shown that Wainscott's isolated comments were discriminatory or reflective of a cumulative managerial attitude that had any long-standing effect on AK Steel's employee-benefits policies.

Finally, Blosser's argument that his medical condition was used against him mischaracterizes the record. Schutte and AK Steel had reported dissatisfaction with Blosser's performance well before his medical leave. Although Blosser protests that the district court "appears to have simply accepted [AK Steel's] assertions of [Blosser's] poor performance without any mention or

consideration of the opposing evidence" presented in Blosser's case, this is an inaccurate characterization. AK Steel had documented complaints about Blosser's work performance before and after his medical leave; no rational juror could conclude that despite consistently poor performance and the economic need for involuntary layoffs, the real cause of Blosser's termination was his illness and FMLA leave. Having failed to establish a causal connection between his protected activity and his adverse employment action, Blosser has failed to establish a prima facie FMLA-retaliation claim.

Blosser also fails to raise any genuine issue of material fact with respect to his prima facie retaliation claim under Ohio law, because even assuming that Blosser engaged in a protected activity by sending the January 11, 2009, email adding comments about his 2008 performance evaluation, he did not establish causation. Ohio courts borrow from federal case law to analyze retaliation claims; to establish a prima facie case of retaliation under either federal or Ohio law, Blosser must show that (1) he engaged in a protected activity, (2) AK Steel was aware that Blosser had engaged in that activity, (3) AK Steel took an adverse employment action against Blosser, and (4) there is a causal connection between the protected activity and the adverse action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (quoting *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007)). Blosser has not raised any genuine issue of material fact with respect to causation. AK Steel made the decision to terminate Blosser as part of a company-wide reduction in force on January 7, 2009, four days before Blosser emailed Nelson. In other words, there is no possible way that the protected activity, Blosser's email to Nelson, could have caused Blosser's termination

because the decision, which had not yet been communicated to Blosser, had already been made when Blosser sent the email.

Blosser argues, however, that the layoff list was modified between January 7 and January 19, 2009, that Nelson's failure to investigate his complaints to her could be viewed as evidence of retaliation, and that AK Steel failed to reconsider its decision between the time when he was temporarily laid off and the time when his termination became permanent. These arguments are meritless. Given that AK Steel had already decided to terminate Blosser, its failure to explore alternatives to laying Blosser off after Nelson received the email does not indicate that the email caused his termination, even if other employees were initially included on the layoff list but were ultimately not laid off. In addition, Blosser's argument about Nelson's failure to investigate his complaints is meritless because there was no alleged discrimination for Nelson to investigate. The email was simply an unsuccessful attempt by Blosser to avoid being laid off. Blosser has failed to provide evidence sufficient to convince any rational juror that he suffered retaliation under Ohio law because he failed to show a causal connection between that protected activity and his termination.

Blosser has also failed to raise any genuine issue of material fact with respect to his claim of disability discrimination under Ohio law, because he has not shown that he was disabled. To establish a prima facie case of disability discrimination under Ohio law, Blosser must demonstrate (1) that he was handicapped or disabled, (2) that an adverse employment action was taken by AK Steel, at least in part, because he was handicapped or disabled, and (3) that Blosser, though handicapped or disabled, can safely and substantially perform the essential functions of his job. *See*

*City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998). Blosser has

not established that he was disabled. Under Ohio Revised Code § 4112.01(A)(13), a person can be

defined as disabled based on "a *record* of a physical or mental impairment; or *being regarded* as

having a physical or mental impairment." Blosser argues that even though he did not have any

impairment after returning from medical leave, he had a record of a physical or mental impairment

that qualified him as disabled under § 4112, and that because AK Steel was aware of his illness and

medical leave, he was regarded as having an impairment even after he returned to work, especially

because he advised his supervisors that there was a chance that his tumor would recur.

Decisions by district courts in this circuit undermine Blosser's position. In *Wind v. Walgreen

Co.*, a discrimination case brought under § 4112 and the Americans with Disabilities Act, the

plaintiff returned to work without restrictions after taking medical leave. *Wind v. Walgreen Co.*, No.

1:10-cv-94, 2011 U.S. Dist. LEXIS 154972, at *38-40 (S.D. Ohio June 22, 2011). Although the

plaintiff alleged that he suffered from permanent injuries that would require him to take repeated

disability leave, the district court denied that the plaintiff had a record of an impairment that

substantially limited any major life activity, and emphasized that this was not a question for the jury

to decide. *Id.* Blosser, like the plaintiff in *Wind*, took medical leave and returned after treatment;

even the potential need to take future medical leave to treat the ongoing condition does not

necessarily indicate that Blosser had a disability under § 4112 because he faced no work restrictions

or substantial limits on any major life activity.

Another district court decision highlights the importance of the temporary duration of Blosser's condition. In *Green v. Rosemont Industries*, the plaintiff underwent hernia surgery and returned to work without restrictions, but alleged that his record of impairment rendered him disabled for purposes of the ADA and Ohio Rev. Code § 4112. *Green v. Rosemont Indus.*, 5 F. Supp. 2d 568, 572-73 (S.D. Ohio 1998). The district court, in denying that the plaintiff had any record of a physical impairment that substantially limited a major life activity, highlighted the temporary duration of the condition. *Id.* While a hernia is not as serious a medical condition as a brain tumor, there is no dispute in this case that Blosser's condition was of temporary duration and was resolved through surgery and other treatment, allowing him to return to work without restriction.

Blosser provides no defense of his argument before the district court that AK Steel regarded him as disabled. He merely notes that AK Steel "regarded him as continuing to suffer from the disability even after his brain surgery." Since no evidence in the record supports the notion that AK Steel regarded Blosser as disabled when he returned to work and was reinstated without limitation, Blosser has clearly raised no genuine issue of material fact on this issue.

Finally, even if Blosser had established a prima facie case for FMLA retaliation or a case for retaliation or discrimination under Ohio law, AK Steel advanced legitimate, nondiscriminatory reasons for terminating Blosser's employment, and Blosser has not raised a genuine issue of material fact to show that these reasons were merely pretext. *See Johnson v. United States Dep't of Health & Human Servs.*, 30 F.3d 45, 47 (6th Cir. 1994) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). The economic recession of 2008 forced AK Steel to implement company-

wide involuntary layoffs, and Blosser's position was eliminated as part of that reduction in force. Blosser was selected for termination using the same criteria used to evaluate every employee: seniority, work performance, and uniqueness of skills. Based on the evidence in the record, no rational juror could conclude that AK Steel's stated rationale for terminating Blosser's employment during the 2009 reduction in force—that Blosser was a relatively junior, poorly performing employee with a nonunique set of skills—was pretextual. His state and federal law retaliation and discrimination claims therefore do not survive summary judgment.

The district court's judgment is affirmed.